

**FILED**

4:53 pm, 1/24/25

**U.S. Magistrate Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

---

LISA K. MCARTOR, in her capacity as
Personal Representative of the Estate of
Weston D. McArtor, deceased; BEI
SERVICES, INC.,

   Plaintiffs,

 vs.

VALSOFT CORPORATION, INC.;
ASPIRE USA, LLC d/b/a ASPIRE
SOFTWARE,

   Defendants.

Case No.  1:23-CV-00136-SWS

---

## ORDER ON DEFENDANTS' *MOTION TO STRIKE PLAINTIFFS' EXPERT BRIAN LAPPEN*

This matter is before the Court on Valsoft Corporation, Inc. ("Valsoft") and Aspire USA, LLC's ("Aspire") (collectively "Defendants") *Motion to Strike Plaintiffs' Expert Brian Lappen* ("*Motion*") (ECF No. 59). After reviewing the *Motion*, Weston D. McArtor ("Mr. McArtor") and BEI Services, Inc.'s ("BEI") (collectively "Plaintiffs") *Response*, Defendants' *Reply*, the applicable law, and being otherwise fully advised, the *Motion* shall be **DENIED** for the reasons outlined herein:

### BACKGROUND

## I.  Introduction

This action involves the sale of Plaintiffs' business, Nexera, to Defendants. *See* ECF No. 1. Prior to the acquisition, Nexera was in the business of "developing and providing data analytics software for performance measurement and benchmarking of service

1

operations including, but not limited to, the printing industry." *Id.* ¶ 6. Defendants, on the other hand, "specialize in the acquisition and development of software companies in vertical markets." *Id.* ¶ 8.

In 2022, Mr. McArtor "began an extensive search to find a buyer to purchase and continue [Nexera's] operations." *Id.* ¶¶ 16–17. Ultimately, he found Valsoft and "initiated discussions wherein Defendants would purchase [Nexera], retain the employees and continue its operations." *Id.* ¶ 19. These negotiations culminated in the parties entering into an Asset Purchase Agreement ("APA"). *See* ECF No. 1-2. Under the APA, Defendants purchased Nexera, and the majority of BEI's assets for $3.5 million. *Id.* The APA also contained a provision allowing "BEI to receive future contingent payments and earnout payments if Nexera met certain performance goals for Defendants after the acquisition." ECF No. 79 at 2. Additionally, BEI and Aspire entered into a Consulting Agreement…by which Mr. McArtor would serve as a part-time consultant on business related matters for a six-month term with a renewal option thereafter." *Id.* (citing ECF No. 1-6).

In the instant suit, Plaintiffs claim Defendants breached the APA by fraudulently conspiring and intentionally underperforming, thereby thwarting BEI's ability to receive the contingent and earnout payments. ECF No. 1 ¶¶ 82–86. Further, Plaintiffs allege that Defendants breached the Consulting Agreement by terminating Mr. McArtor as a post-acquisition consultant, less than six months after entering the Consulting Agreement. *Id.* ¶ 72. In sum, Plaintiffs asserted nine causes of action in both contract and tort.[1] However, on

---

[1] Count 1: Beach of the APA; Count 2: Breach of the Consulting Agreement (alleged only against Aspire); Count 3: Breach of an Oral Contract, or Promissory Estoppel, (Previously Dismissed); Count 4: Declaratory Judgment concerning the APA (Previously Dismissed); Count 5: Fraud; Count 6: Civil Conspiracy; Count 7: Negligent

January 10, 2025, the Court entered its *Order Denying Plaintiffs' Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment* ("*Summary Judgment Order*"). ECF No. 79. Therein, the Court granted summary judgment on Counts 5, 6, 7, and 9. *See id.* Further, the Court held that a request for attorney fees under the APA is not an independent cause of action, and as such, it dismissed Count 8. *Id.* The Court's decision resulted in only Count 1 (Breach of the APA) and Count 2 (Breach of the Consulting Agreement) proceeding to trial. *Id.* at 21.

## II. The Motion to Strike

Defendants' instant *Motion* seeks to strike Plaintiffs' expert Brian Lappen ("Mr. Lappen"). ECF No. 59. Generally, Defendants argue (1) Mr. Lappen's opinions are not based on sufficient facts or data; (2) Mr. Lappen does not use reliable methodologies or reliably apply those methodologies; and (3) Mr. Lappen's opinions will not assist the trier of fact. *Id.* at 3–11.

Conversely, Plaintiffs argue that Defendants disregard Mr. "Lappen's extensive experience evaluating and opining on post-closing disputes, and specifically earnout disputes between buyers and sellers." ECF No. 68 at 1. Further, they aver that Defendants paint Mr. Lappen's report and testimony as inaccurate or methodologically flawed "when, in reality, they simply disagree with the record evidence he considered as a basis for his opinions." *Id.* Finally, Plaintiffs argue that district courts have broad discretion in admitting

---

Misrepresentation (in the alternative as to Fraud and Civil Conspiracy); Count 8: Attorney Fees under the APA; and Count 9: Punitive Damages.

expert testimony, and that breadth of discretion is widened when the court sits as the finder of fact—i.e., during a bench trial. *Id.* at 2–3.

**LEGAL STANDARDS**

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). In utilizing this discretion, the Court will first look to the Court's Local Rules and the Federal Rules of Civil Procedure. Local Rule 26.1(e)(4) requires expert designations to comply with Federal Rule of Civil Procedure 26(a)(2). U.S.D.C.L.R. 26.1(e)(4). Rule 26(a)(2) provides two separate categories of expert witnesses: retained witnesses and non-retained witnesses. FED. R. CIV. P. 26(a)(2)(B). Retained expert witnesses are those witnesses "retained or specially employed to provide expert testimony." *Id.* If a witness is a retained expert, a party's disclosure of expert testimony must include the following:

> [A] complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

In addition to the requirements of Rule 26, the proponent of the expert testimony bears the burden of proving the foundational requirements of Federal Rule of Evidence 702 by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,

592 (1993); *Becerra v. Schultz*, 499 F. Supp. 3d 1142, 1146 (D. Wyo. 2020). Rule 702 sets

the following parameters for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Each expert's opinions are subject to the same standards of reliability that govern

the opinions of strictly scientific experts retained for the purposes of litigation. *See Kumho*

*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding *Daubert* applies even

when an expert's opinion relies on skill or experience-based observation). Rule 702 and

*Daubert* require courts act as gatekeepers by ensuring all expert testimony, whether

scientific, technical, or any other specialized knowledge, is both reliable and relevant. *Id.*

at 152–53.[2] To make the requisite findings, the Court must first determine whether the

expert is qualified by knowledge, skill, experience, training, or education to render an

opinion. *See id.* Second, the Court must determine whether the expert's opinions are

sufficiently reliable. *Id.*; FED. R. EVID. 702; *Ralston v. Smith & Nephew Richards, Inc.*, 275

---

[2] *See, e.g.*, *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 991 (10th Cir. 2003) ("Fulfilling the gatekeeper duty requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts.").

F.3d 965, 969 (10th Cir. 2001). Finally, the court must determine whether the proposed expert testimony will assist the trier of fact. FED. R. EVID. 702.[3]

As noted, Rule 702 obliges district courts to gatekeep information and testimony that may be unreliable or irrelevant, *see Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 991 (10th Cir. 2003), and the main rationale for the rule, of course, is to prevent the jury from hearing irrelevant or unreliable expert testimony. However, this basis becomes tenuous when the court itself sits as the finder of fact. *See id.* That is, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *AG of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). As one court remarked: "Because the doctrine is designed to protect juries it is largely irrelevant in the context of a bench trial. There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM, 2021 U.S. Dist. LEXIS 105077, at *9 (D. Kan. June 4, 2021) (cleaned up) (quoting *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)).

## ORDER OF THE COURT

## I.  Mr. Lappen has met the requirements of Rule 26(a)(2)(B).

---

[3] *See Cruz v. City & Cty. of Denver*, No. 21-cv-03388-KLM, 2023 U.S. Dist. LEXIS 106421, at *6–7 (D. Colo. June 20, 2023) ("Ultimately, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court." (citation omitted)); *Perez v. Henneberry*, No. 09-cv-01681-WJM-MEH, 2011 U.S. Dist. LEXIS 52428, at *2 (D. Colo. May 5, 2011) ("The court generally has significant discretion in determining whether to admit expert testimony and that discretion is significantly broader when the case will be tried to the court rather than a jury." (citation omitted)).

To begin, the Court finds that Mr. Lappen gives a satisfactory statement of all the opinions he will express, the bases/reasons for those opinions, the facts and data considered, and the exhibits that will be used to summarize or support his opinions. *See* Expert Report of Brian R. Lappen, ECF No. 41 at 7–24. [hereinafter Lappen's Report]; FED. R. CIV. P. 26(a)(2)(B). Mr. Lappen has also satisfactorily set forth his qualifications. *See* Lappen's Report, Appendix A, at 1–2. His curriculum vitae includes a list of all the publications he has authored in the past 10 years, and all the cases he has testified as an expert at trial or been deposed for in the last four years. *Id.* Finally, Mr. Lappen notes that he is being compensated "on an hourly basis at $525 per hour." *Id.* at 2. In reviewing Mr. Lappen's expert report and attachments, the Court finds he has satisfied the requirements of Rule 26(a)(2)(B).

## II. Mr. Lappen meets the requirements of Rule 702.

### A. Mr. Lappen possesses the requisite "knowledge, skill, training, or education" required under Rule 702.

First, the Court must determine whether Mr. Lappen qualifies as an expert. That is, whether Mr. Lappen possesses the requisite "knowledge, skill, experience, training, or education" to render an opinion in this matter. *See* FED. R. CIV. P. 702. Under Rule 702, "it is not paramount that witnesses satisfy all these qualifications to testify as an expert[;]" rather, it is the witness's *overall qualifications* that must provide expertise relevant to the opinions offered. *Black Card, LLC v. Visa U.S.A., Inc.*, No. 15-CV-027-S, 2020 U.S. Dist. LEXIS 263596, at *11 (D. Wyo. Sep. 15, 2020) (emphasis added) (citations omitted). In this sense, "Rule 702 does not impose an 'overly rigorous' requirement of expertise,

recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (citing *United States v. Velasquez*, 64 F.3d 844, 849, 33 V.I. 265 (3rd Cir. 1995)).

In reviewing Mr. Lappen's background, the Court finds that he is qualified by his years of training, education, and experience. Mr. Lappen holds a Master of Accountancy degree from the University of Wisconsin-Madison; he is a licensed CPA in Illinois and a Forensic & Valuation Principal with Plante Moran, an audit, tax, consulting, and wealth management firm. Mr. Lappen has 23 years of experience in public accounting, which includes "consulting with clients on a diverse array of forensic accounting engagements and litigation and dispute matters, including matters involving merger and acquisition disputes, damage calculations, and the application and interpretation of Generally Accepted Accounting Principles ("GAAP") for the financial reporting of both private and publicly traded companies." Lappen's Report at 2. All of which proves sufficient to qualify him as an expert in this matter. Further, Defendants do not directly question Mr. Lappen's qualifications. Based on his overall knowledge, skill, training, education, and experience, the Court finds that Mr. Lappen meets the initial hurdle of expert qualification.

### B. Mr. Lappen's opinions are sufficiently reliable.

Next, the Court must determine whether Mr. Lappen's opinions are sufficiently reliable. Under *Daubert* and its progeny, the Court should find an expert's opinions "reliable if the reasoning or methodology of the expert is valid and 'can be applied to the facts in issue.'" *Cruz v. City & Cty. of Denver*, Civil Action No. 21-cv-03388-KLM, 2023 U.S. Dist. LEXIS 106421, at *6 (D. Colo. June 20, 2023) (quoting *Daubert*, 509 U.S. at

592); *cf. O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) ("[T]he rejection of expert testimony is the exception rather than the rule." (quoting FED. R. EVID. 702 advisory committee's note)). Here, it is obvious that Defendants disagree with Mr. Lappen's testimony, opinions, and underlying methodologies used to reach those opinions; however, the proponent needn't establish that their expert's opinions are "indisputably correct," for even "shaky" expert testimony may be admissible. *Squires*, 829 F. Supp. 2d at 1055 (D. Colo. 2011).

Defendants first argue that Mr. Lappen ignored certain facts and data when arriving at the conclusion that price increases post-acquisition had a material adverse effect. ECF No. 59 at 3. "[N]owhere does he identify *definitive proof* that numerous customers left because of purported rushed price changes." *Id.* (emphasis added) However, Defendants conflate the appropriate standard; as noted, an expert does not need "definitive proof" to reach their conclusions. To the contrary, even if the Court thinks an expert's conclusion is incorrect, it will be admissible so long as the expert's opinions are based on reliable reasoning or methodology. *See Cruz*, 2023 U.S. Dist. LEXIS 106421, at *6; *Black Card*, 2020 U.S. Dist. LEXIS 263596, at *15.

As Plaintiffs point out, Mr. Lappen based his opinion, at least in part, upon a spreadsheet that identified the reasons customers left. ECF No. 68 at 3. Further, "Mr. Lappen and Defendants' expert, Don Drysdale, agree that *at least* four customers left Nexera because of the rushed price increases…." *Id.* (emphasis in original). All of which lends support to the Court's finding that Mr. Lappen's opinion regarding price increases post-acquisition meets the reliability threshold under Rule 702.

Next, and similarly, Defendants take issue with Mr. Lappen's conclusion that Defendants' decisions to fire certain Nexera personnel and cut costs post-closing was materially adverse to the operations of Nexera. ECF No. 59 at 5. Once again, the Court finds that Mr. Lappen's opinions are supported by the record evidence—e.g., sworn testimony from Defendants' employees, Bethany Sondeno and Nicola De Blasi. ECF No. 68 at 4; Lappen's Report at 13. Defendants argue that there were other explanations that could account for a decrease in business post-closing, and Mr. Lappen did not consider those potentialities. ECF No. 59 at 5–6. However, as Plaintiffs correctly point out, "Mr. Lappen can evaluate the record evidence and accept or reject [it] in accord[ance] with what he deems credible based on his experience. Defendants cannot wish away record evidence damaging to their case any more than [they] can prevent Mr. Lappen from relying on the same as a basis for his opinions." ECF No. 68 at 4–5. The Court agrees and finds that Mr. Lappen's opinions regarding firing Nexera personnel and cutting costs post-closing are rooted in sufficient reasoning and methodology to meet the reliability threshold under Rule 702.

Finally, Defendants argue that Mr. Lappen's opinion that "Defendants' failure to cross-sell Nexera with another company…negatively affect[ed] Plaintiffs' ability to meet the earnout and contingent payments[,]" is methodologically flawed and fails to account for a software conflict that prevented cross-selling. ECF No. 59 at 6. Once again, Defendants' argument goes to the weight of the evidence, not its reliability. As far as the Court can surmise, in reaching his conclusions on cross-selling, Mr. Lappen relied upon

the record evidence and his own experience. While Defendants clearly disagree with his conclusion, the Court finds Mr. Lappen's opinion is sufficiently reliable under Rule 702.

Ultimately, the Court finds Mr. Lappen adequately set forth his opinions and the corresponding bases for those opinions based upon the inspection, review, and interpretation of facts and data; subsequently, he utilized his own personal knowledge, experience, and understanding of the industry to reach his opinions. This satisfies Rule 702's reliability requirement. Defendants' concerns with respect to the methodology, evidence, and data relied upon and not relied upon, go to the weight of the evidence, not admissibility. As this Court has previously held, such "concerns are best addressed through cross examination, rebuttal expert testimony, and presentation of contrary evidence." *Black Card*, 2020 U.S. Dist. LEXIS 263596, at *16. Ultimately, the Court finds that Mr. Lappen utilized reliable reasoning/methodology in reaching his opinions, grounded in his forensic accounting background and familiarity with acquisitions of this nature.

### C.  Mr. Lappen's opinions will assist the trier of fact.

Next, the Court must determine whether Mr. Lappen's opinions will assist the trier of fact. In this case, the Court *is* the trier of fact. As such, the Court is afforded far greater leeway in determining whether expert testimony will assist the fact finder, i.e., itself.[4] *See Tyson Foods, Inc.*, 565 F.3d at 780. And further, "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there

---

[4] *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006) ("The Tenth Circuit takes a liberal approach to the question of whether proffered expert testimony will assist the jury."); *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) ("The jury is intelligent enough to ignore what is unhelpful in its deliberations.").

are strong factors such as time or surprise favoring exclusions." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006) (citation omitted). In this case, the Court finds no such countervailing factors, and as such, the Court finds that Mr. Lappen's testimony and report will assist the fact finder.

### III. Concerns about reliability are diminished in a bench trial.

Defendants ask the Court to strike Plaintiff's expert, Brian Lappen. However, "[i]n a bench trial setting, it is appropriate for the court to allow the expert to testify, and later make determinations about the admissibility, weight, and credibility of the expert's testimony." *Bevill Co. v. Sprint/United Mgmt. Co.*, No. 01-2524-CM, 2007 U.S. Dist. LEXIS 32401, at *6 (D. Kan. Apr. 30, 2007) (citations omitted).[5] As noted above, the typical concerns over expert reliability are markedly lessened in a bench trial setting. *Tyson Foods, Inc.*, 565 F.3d at 779. And "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Id.* at 780 (finding no abuse of discretion where a district court admitted expert testimony and subsequently found it unreliable after its presentation at trial).

The fact that the Court will sit as the finder or fact alone is not dispositive of the inquiry of expert qualification;[6] however, given that Mr. Lappen meets the requirements

---

[5] *See also Ekotek Site PRP Comm. v. Self*, 1 F. Supp. 2d 1282, 1296 (D. Utah 1998) ("[T]he court does not deem it necessary in this instance, when acting as the trier of fact itself, to exercise its discretion as gatekeeper and exclude the testimony, especially given [the expert's] and the court's own ability to examine the witness and flesh out any weaknesses in that testimony.").

[6] To be sure, simply because the finder of fact is donning a robe does not mean *any* expert passes muster. That is, even in a bench-trial setting, the expert must still meet the requirements of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702. *See AG of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009); *Perez*, 2011 U.S. Dist. LEXIS 52428, at *7.

of Rule 26 and Rule 702—and concerns about presenting unreliable or irrelevant testimony to the jury are effectively neutralized—the Court finds no reason why Mr. Lappen should be barred from testifying, nor why his expert report should be stricken. Further, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.…Vigorous cross-examination, [and] presentation of contrary evidence…are the traditional and appropriate means of attacking shaky but admissible evidence." *O'sullivan*, 233 F. Supp. 3d at 922.

## CONCLUSION

Based upon the preceding, the Court finds Mr. Lappen has met the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of Evidence 702. Therefore, Defendants' *Motion* (ECF No. 59) is **DENIED**.

Dated this <u>24th</u> day of January, 2025.

Scott P. Klosterman
United States Magistrate Judge