

FILED

5:31 pm, 1/31/25

U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

LISA K. MCARTOR, in her capacity as Personal Representative of the Estate of Weston D. McArtor, deceased; BEI SERVICES, INC.,

  Plaintiffs,

vs.

VALSOFT CORPORATION, INC.; ASPIRE USA, LLC, d/b/a ASPIRE SOFTWARE,

  Defendants.

Case No. 1:23-CV-00136-SWS

**ORDER ON PLAINTIFFS'** *MOTION FOR LEAVE TO FILE AMENDED COMPLAINT TO CONFORM TO THE EVIDENCE PURSUANT TO FED. R. CIV. P. 15(b)*

This matter is before the Court on Lisa K. McArtor and BEI Services, Inc.'s ("BEI") (collectively "Plaintiffs") *Motion for Leave to File Amended Complaint to Conform to the Evidence Pursuant to Fed. R. Civ. P. 15(b)* ("*Motion*"). ECF No. 82. After reviewing the *Motion*, Valsoft Corporation, Inc. ("Valsoft") and Aspire USA, LLC's ("Aspire") (collectively "Defendants") *Response* (ECF No. 91), the applicable law, and being otherwise fully advised, the *Motion* shall be **DENIED** for the reasons outlined herein:

## BACKGROUND

This action involves the sale of Plaintiffs' business, Nexera, to Defendants. *See* ECF No. 1. Prior to the acquisition, Nexera was in the business of "developing and providing data analytics software for performance measurement and benchmarking of service

1

operations including, but not limited to, the printing industry." *Id.* ¶ 6. Defendants, on the other hand, "specialize in the acquisition and development of software companies in vertical markets." *Id.* ¶ 8.

In 2022, Weston D. McArtor ("Mr. McArtor"), founder and president of BEI, "began an extensive search to find a buyer to purchase and continue [Nexera's] operations." *Id.* ¶¶ 16–17. Ultimately, he found Valsoft and "initiated discussions wherein Defendants would purchase [Nexera], retain the employees and continue its operations." *Id.* ¶ 19. These negotiations culminated in the parties entering into an Asset Purchase Agreement ("APA"). *See* ECF No. 1-2. Under the APA, Defendants purchased Nexera, and the majority of BEI's assets for $3.5 million. *Id.* The APA also contained a provision allowing "BEI to receive future contingent payments and earnout payments if Nexera met certain performance goals for Defendants after the acquisition." ECF No. 79 at 2. Additionally, "BEI and Aspire entered into a Consulting Agreement…by which Mr. McArtor would serve as a part-time consultant on business related matters for a six-month term with a renewal option thereafter." *Id.* (citing ECF No. 1-6).

In the instant suit, Plaintiffs claim Defendants breached the APA by fraudulently conspiring and intentionally underperforming, thereby thwarting BEI's ability to receive the contingent and earnout payments. ECF No. 1 ¶¶ 82–86. Further, Plaintiffs allege that Defendants breached the Consulting Agreement by terminating Mr. McArtor as a post-acquisition consultant less than six months after entering the Consulting Agreement. *Id.* ¶

72. In sum, Plaintiffs asserted nine causes of action in both contract and tort.[1] However, on January 10, 2025, the Court entered its *Order Denying Plaintiffs' Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment* ("*Summary Judgment Order*"). ECF No. 79. Therein, the Court granted summary judgment on Counts 5, 6, 7, and 9. *See id.* Further, the Court held that a request for attorney's fees under the APA is not an independent cause of action, and as such, it dismissed Count 8. *Id.* The Court's decision resulted in only Count 1 (Breach of the APA) and Count 2 (Breach of the Consulting Agreement) proceeding to trial. *Id.* at 21.

Included in the Court's *Summary Judgment Order* was a finding that Plaintiffs' theory that Defendants breached Section 4.4(ii) of the APA by allegedly failing to cross-sell was not contained in the *Complaint* and not properly before the Court. *See id.* On November 27, 2024, Defendants filed their *Motion for Partial Summary Judgment* (ECF No. 61) objecting to the cross-selling theory, for it was not included in Plaintiffs' *Complaint*. ECF No. 62 at 11–12. Plaintiffs contested this assertion—arguing that failure to cross-sell was within the scope of the case, contemplated by the APA, supported by the evidence, and a triable issue. *See* ECF No. 69 at 12–14. Ultimately, the Court found that "[t]he failure-to-cross-sell theory was never alleged in the complaint, nor can it be said to be fairly within the scope of the complaint." ECF No. 79 at 13. The Court also noted that

---

[1] Count 1: Beach of the APA; Count 2: Breach of the Consulting Agreement (alleged only against Aspire); Count 3: Breach of an Oral Contract, or Promissory Estoppel, (Previously Dismissed); Count 4: Declaratory Judgment concerning the APA (Previously Dismissed); Count 5: Fraud; Count 6: Civil Conspiracy; Count 7: Negligent Misrepresentation (in the alternative as to Fraud and Civil Conspiracy); Count 8: Attorney Fees under the APA; and Count 9: Punitive Damages.

Plaintiffs had never sought to amend their *Complaint* during the pendency of this action to include such a theory. *Id.*

Following entry of the Court's *Summary Judgment Order*, Plaintiffs filed the instant *Motion* seeking to amend their *Complaint* under Federal Rule of Civil Procedure 15(b) to include allegations that Defendants committed to cross-sell Nexera but failed to do so, "to clarify the APA provisions and facts giving rising to the breach of contract theory in Count 1[,] and to allow Plaintiffs to assert failure to cross-sell as a basis for their breach of contract action against Defendants." ECF No. 82 at 6. In their *Response*, Defendants argue that "[t]his eleventh-hour amendment should be denied as impermissible under the rules and case law, untimely, prejudicial to Defendants, and futile." ECF No. 91 at 2. Further, Defendants contend that they never "expressly consented to Plaintiffs' attempt to conform the pleadings to include new claims or issues." *Id.* at 3. And to the extent that Rule 15(b) allows implicit amendment, Defendants argue that Plaintiffs have not met their burden. *Id.* at 3–4.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) provides for the amendment of pleadings, enabling the parties "to assert matters that were overlooked or were unknown at the time the party interposed the original complaint or answer." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and* Procedure § 1473 (3d ed. June 2024 update); FED. R. CIV. P. 15(a). While Rule 15(a) does not enumerate permissible bases for amendment, courts frequently allow amendment for myriad reasons. *See* FED. R. CIV. P. 15(a)(2) (instructing that leave to amend should be freely granted when justice so requires). In fact, "[r]effusing

4

leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Untimeliness alone is insufficient to deny leave to amend; however, "where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) (citing *Svoboda v. Trane*, 495 F. Supp. 367 (E.D. Mo. 1979), *aff'd*, 655 F.2d 898 (8th Cir. 1981)).

While Rule 15(a) is the preferred mechanism to amend the pleadings prior to trial, "there are instances in which the need to [amend] does not become apparent until so close to trial, or after the trial has actually commenced, that the request for a change can be made only when the trial is under way." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and* Procedure § 1491 (3d ed. June 2024 update). For such scenarios, Rule 15(b) provides two instances where the complaint may be amended:

> **(1)** *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
> **(2)** *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even

5

after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

FED. R. CIV. P. 15(b).[2] "Rule 15(b)(2) applies only when the defendant has consented to trial of the non-pled factual issues, and application of Rule 15(b)(2) requires that a party expressly or impliedly consent to a trial on an unpled claim and not be prejudiced by doing so." *Farabaugh v. Isle, Inc.*, Civil Action No. 20-cv-03644-CNS-STV, 2024 U.S. Dist. LEXIS 79235, at *7 (D. Colo. Mar. 6, 2024) (magistrate's report and recommendation adopted by district judge) (cleaned up) (quoting *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 983 (4th Cir. 2015)). "Implied consent exists 'where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection.'" *Acosta v. United States*, No. 15-CV-0530 SMV/KRS, 2017 U.S. Dist. LEXIS 135972, 2017 WL 3701614, at *6 (D.N.M. Aug. 24, 2017) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 457 (10th Cir. 1982)). "A party impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence." *Green Country Food Mkt., Inc. v. Bottling Grp.*, LLC, 371 F.3d 1275, 1280 (10th Cir. 2004).

## ORDER OF THE COURT

**I. Defendants have not expressly or impliedly consented to amendment.**

---

[2] *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir. 1995) ("The decision to grant or deny an amendment under Rule 15(b) is within the discretion of the district court and will not be disturbed on appeal absent an abuse of that discretion.").

To begin, the Court notes that Plaintiffs do not differentiate between Rule 15(b)(1) and (b)(2) in their *Motion*. However, it appears that they tacitly invoke the latter provision. Further, the Court finds that any argument made under Rule 15(b)(1) is premature, as the terms of that provision explicitly contemplate amendment during trial. *See* FED. R. CIV. P. 15(b)(1).

To the extent that Rule 15(b)(2) even applies at the pretrial stage,[3] the Court finds Defendants have not expressly consented to Plaintiffs' attempt to amend the pleadings. *See* ECF No. 91 at 3–6. Therefore, the issue presented is whether Defendants impliedly consented to amendment. As articulated in *Eller v. Trans Union, LLC*, there are two ways in which a party can impliedly consent: (1) introducing evidence on the issue or (2) failing to object when the opposing party introduces such evidence. 739 F.3d 467, 479 (10th Cir. 2013) (quoting *Green Country Food Mkt.*, 371 F.3d at 1280). Plaintiffs argue that "the extensive discovery already completed on the cross-selling theory involving MPS, and the parties' dueling expert reports and testimony on the cross-selling theory," equates to implied consent. ECF No. 82 at 6.

---

[3] There is some incongruity within this circuit as to whether Rule 15(b) is applicable to amend the pleadings prior to trial. *ACE USA v. Union Pac. R.R. Co.*, No. 09-2194-KHV, 2011 U.S. Dist. LEXIS 141228, at *9 (D. Kan. Dec. 7, 2011) ("A circuit split exists…with respect to whether Rule 15(b) applies at the pretrial stage of litigation, and the Tenth Circuit has not squarely addressed the issue."); *compare Faustin v. City and Cnty. of Denver, Colo.*, 423 F.3d 1192, 1196 (10th Cir. 2005) (finding plaintiff impliedly consented to amendment under Rule 15(b) during the summary judgment stage), *with Gold v. Local 7 United Food & Commer. Workers Union*, 159 F.3d 1307, 1309 (10th Cir. 1998) ("[The] Rule 15(b) motion was made before trial, when no issues had or could have been tried. Rule 15(b) seems a totally inappropriate vehicle for a motion to amend prior to trial."); *see also Ramos v. State Farm Mut. Ins. Co.*, Civil Action No. 19-cv-01634-KMT, 2020 U.S. Dist. LEXIS 109072, at *13, n. 3 (D. Colo. June 22, 2020) ("Tenth Circuit case law is unclear as to whether Rule 15(b)(2) applies even at the summary judgment stage." (citing *Ahmad v. Furlong*, 435 F.3d 1196, 1203 n.1 (10th Cir. 2006))). It seems clear to this Court that amendment under Rule 15(b)(1) is inapplicable at the pretrial stage. However, as there is some precedent in this circuit allowing Rule 15(b)(2) to serve as a mechanism to amend the pleadings before trial, the Court will assume as much and proceed with its analysis.

Conversely, Defendants argue that implicit consent via discovery is not recognized by Tenth Circuit caselaw. ECF No. 91 at 3–4. The Court agrees. Under *Eller*, the party resisting amendment must have either introduced evidence on the issue or failed to object to the introduction of such evidence. *See Eller*, 739 F.3d at 479; *Farabaugh*, 2024 U.S. Dist. LEXIS 79235, at *7 ("Plaintiff argues that Defendants have impliedly consented to trying the issue through written discovery and depositions. This is not a method of implied consent recognized in this Circuit." (citation and internal quotation marks omitted)). Here, trial in the above-captioned matter has yet to occur. Accordingly, neither party has introduced any evidence at trial relating to Plaintiffs' breach of contract claim under the APA, including any evidence regarding Defendants' alleged failure to cross-sell Nexera. In addition, since trial has yet to occur, Defendants have not had to object to the introduction of any evidence relating to cross-selling Nexera but will likely do so as evidenced by their objections to this *Motion*. *See* ECF No. 82 at 2; ECF No. 62 at 11–12.

Additionally, Plaintiffs point to their expert raising the failure to cross-sell issue in his expert report as a basis for implied amendment. ECF No. 82 at 4. But as this Court already pointed out, a party cannot implicitly amend their pleadings by introducing a new theory via an expert's report.[4] ECF No. 79 at 13 (quoting *Pacheco v. State Farm Mut. Auto. Ins. Co.*, No. 23-CV-00305-NYW-SBP, 2024 WL 3834166, at *12 (D. Colo. Aug. 15, 2024) ("[A] plaintiff cannot amend [their] pleading by introducing new theories in an expert report.")). Further, Plaintiffs' arguments that the discovery in this case abounds with

---

[4] Additionally, the Court notes that Defendants expressly objected to the entirety of Plaintiffs' expert's report via their *Motion to Strike Plaintiffs' Expert Brian Lappen*. ECF No. 59.

8

discussions of the cross-selling theory, ECF No. 82 at 4–6, is equally insufficient to demonstrate implied consent to amendment, for "[i]mplied consent cannot…be based on the introduction of evidence that is relevant to an issue already in the case if the party presenting the evidence does not indicate that it intended to raise a new issue." *ACE USA v. Union Pac. R.R. Co.*, No. 09-2194-KHV, 2011 U.S. Dist. LEXIS 141228, at *12 (D. Kan. Dec. 7, 2011) (citing *Green Country Food Mkt.*, 371 F.3d at 1280). Plaintiffs have argued that cross-selling is relevant to "multiple issues" in this action. *E.g.*, ECF No. 83 at 10. As such, prior discovery concerning cross-selling cannot serve as a basis to impliedly amend the *Complaint* to include Plaintiffs' wholly new theory that Defendants breached Section 4.4(ii) of the APA by failing to cross-sell.[5] Therefore, the Court finds that the inclusion of the cross-selling theory throughout discovery, by experts or otherwise, is an insufficient basis to show implicit amendment to the *Complaint*. *See Koch v. Koch Indus.*, 203 F.3d 1202, 1217 (10th Cir. 2000). Accordingly, to the extent Plaintiffs seek amendment under Rule 15(b) to assert a stand-alone claim for breach of Section 4.4(ii) of the APA by failing to cross-sell, their *Motion* is **DENIED**.

## II. Plaintiffs' *Motion* is untimely and lacks an adequate explanation or basis for a finding of excusable neglect.

In finding Rule 15(b) unsuitable to grant amendment, the Court turns next to Rule 15(a). "Rule 15(a) does not restrict a party's ability to amend its complaint to a particular

---

[5] *See* ECF No. 79 at 12–13 ("Plaintiffs' attempt to shoehorn in a new theory of recovery on Count 1 based on Defendant' alleged failure to cross-sell is not well taken. The theory that Defendants breached Section 4.4(ii) of the APA by failing to cross-sell is distinct from the theory stated in the complaint that Defendants breached Section 4.4(i) by taking action that 'would likely have a Material Adverse Effect on the Business or the ARR' because the theories involve different clauses of the APA and different factual allegations.").

stage in the action." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). However, as the Supreme Court and the Tenth Circuit have held, undue delay, failure to cure deficiencies, and undue prejudice to the opposing party are all factors trial courts should consider in determining whether leave to amend should be granted. *Id.* at 1204 (quoting *Foman*, 371 U.S. at 182). "The longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'" *Id.* (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

In the Tenth Circuit, the "undue delay" inquiry "focuses primarily on the reasons for the delay." *Id* at 1206. And denying amendment is justified "when the [movant] has no adequate explanation for the delay." *Frank*, 3 F.3d at 1365–66. Often, district courts will find a lack of adequate explanation or excusable neglect when the party seeking amendment knew or should have known of the facts giving rise to the prospective amendment but failed to include them in the complaint or thereafter. *See, e.g.*, *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1020–21 (10th Cir. 2011) ("[A] district court has discretion to deny a motion to amend as untimely when the movant's delay is unexplained."); *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) ("[U]nexplained delay alone justifies the district court's discretionary decision."); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) ("[C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend."); *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

The instant *Motion* was filed on January 16, 2025, less than a month before trial. *See* ECF No. 82. The substantive explanation for the late filing is as follows:

> Plaintiffs were unaware Defendants considered the failure to cross-sell claim not within the pleadings until receipt of Defendants' summary judgment briefing filed on November 27, 2024. Plaintiffs reasonably interpreted Defendants' production of hundreds of documents related to MPS Monitor; making MPS Monitor's former CEO and owner, Nicola de Blasi, available for deposition; production of a corporate representative to address the topic of MPS Monitor and cross-selling; and retention of an expert and filing an expert report rebutting Plaintiffs' expert opinions on Defendants' failure to cross-sell—all without objection on the ground failure to cross sell was not within the pleadings—as Defendants' consent to trial on these matters.

*Id.* at 5–6.

If we take Plaintiffs at their word, they did not know of the deficiency in the pleadings—i.e., the omission of a theory that Defendants breached Section 4.4(ii) of the APA by failing to cross-sell—until November 27, 2024. *See id.* However, the reason *why* Plaintiffs waited approximately seven weeks thereafter to file the instant *Motion* remains unclear. Undoubtedly, Plaintiffs have been aware of Section 4.4(ii) of the APA since the inception of this action if not earlier. *See* ECF No 1-2 at 16 (Plaintiffs included a copy of the APA, including sections 4.4(i) and (ii) with their *Complaint*); ECF No. 91 at 6. And by their own admission, discussions of cross-selling featured heavily throughout discovery. *See* ECF No. 82 at 4. Here, the record clearly shows that Plaintiffs knew or should have known the basis for the amendment they now seek but failed to include such a theory in their *Complaint* and failed to seek amendment in a timely fashion thereafter. *See State Distribs., Inc.*, 738 F.2d at 416. The Court finds that nothing in the record, or set forth in Plaintiffs' *Motion*, provides an adequate explanation or basis to find excusable neglect for

11

this delay. Therefore, to the extent Plaintiffs move for amendment under Rule 15(a), their *Motion* is **DENIED**.

### CONCLUSION

Based upon the preceding, the Court finds that Rule 15(b)(1) is an inappropriate vehicle to amend the *Complaint*, Defendants did not expressly or impliedly consent to amendment under Rule 15(b)(2), and Plaintiffs have not provided an adequate explanation for their untimely *Motion* under Rule 15(a). Therefore, Plaintiffs' *Motion* (ECF No. 82) is hereby **DENIED**.

Dated this 31st day of January, 2025.

_____
Scott P. Klosterman
United States Magistrate Judge